## McAnally et al. *v*. Glidden, Receiver, et al.

[No. 4,253.    Filed November 18, 1902.]

LEASE.—*Surrender.*—*Labor Liens.*—The voluntary surrender of a lease before its expiration and the acceptance thereof by the lessor will not operate to defeat labor liens on the leasehold acquired before the surrender.  *p. 26.*

SAME.—*Revocation.*—*Receivers.*—Where the court authorized a receiver to lease property, it had no power to annul or revoke the contract made by the receiver, except under the same conditions that individuals may annul or revoke contracts made by them. *p. 26.*

RECEIVERS.—*Liens Acquired on Property.—Custodia Legis.—Equity.*— Where a receiver who had leased property by order of court thereafter accepted a surrender of the lease with the approval of the court, persons holding liens on the property for work and labor performed for lessee could not enforce their claims by the sale of the property in the hands of the receiver, but the court had equity power to order the payment of the claims by the receiver. *pp. 26, 27.*

From Knox Circuit Court; *G. W. Shaw,* Judge.

Action by John McAnally and others against Ira Glidden, receiver of the Old Pittsburg Coal Company, and others, for the enforcement of liens for labor and material.    From a judgment in favor of defendants, plaintiffs appeal.    *Reversed.*

*John T. Hays* and *Will H. Hays,* for appellants.
*John S. Bays* and *L. F. Bays,* for appellees.

ROBY, J. — John McAnally and seventy-three others, joining by agreement of all parties, filed a "new" complaint, in two paragraphs, against appellees.    Trial was had, special findings of fact made and conclusions of law stated in favor of the defendants. From a judgment rendered in accordance therewith the plaintiffs take this appeal, challenging the correctness of each conclusion of law by their assignment of errors.    No excuse exists for setting out the extended findings of fact.    The salient facts upon which the decision of the case ultimately depends are as

follows: The Old Pittsburg Coal Company, an Illinois corporation, executed its mortgage to appellee Niblack as trustee for its bondholders. The mortgage covered all its property, consisting of a coal-mine in Sullivan county, Indiana, and the appurtenances thereto. On October 19, 1896, said trustee, with certain of the bondholders, instituted an action in the Sullivan Circuit Court for the foreclosure of said mortgage. On the —— day of ——————, 1897, a decree of foreclosure was entered therein, and on July 17, 1897, said property was sold thereunder to said trustee, and a certificate of sale issued to him therefor. On October 20, 1896, the plaintiffs in said foreclosure proceedings procured the appointment of a receiver for said property. It was shown among other things as a reason for such appointment, that the property had been partially destroyed by fire in the preceding July, and that the fire had ignited underground timbers and was likely to ignite the coal; that the shaft entries and air courses were caving in, and irreparable damage was likely to ensue. The coal company admitted the facts so set up, and appellee Glidden was appointed and qualified as such receiver. On January 14, 1897, he presented a verified petition to the court in which he asked leave to lease the mine with its appurtenances to the defendants, DeWitt C. Butts and George H. Rubly, by the name of Butts & Rubly, for two years, upon the best obtainable terms. He further set up therein that the mine had been repaired and put into condition to be operated, and that it was necessary, to protect the interests of the lien holders, that it be operated. The court made an order as prayed and the receiver thereupon entered into a written contract with the said parties by which all the property in his possession was leased to them for two years, in consideration of which they agreed to pay him a royalty upon all coal mined by them. It was further stipulated therein that the receiver should bear no part of the expense of operating the mine. On January 14, 1897, Butts &

Rubly took possession of the mine. They operated it until July, 1897, at which time the foreclosure sale took place, "when they abandoned it and did not thereafter operate it any more. While operating the mine they became indebted to appellants for work done and labor performed in and about the mine as follows:" The amount of each appellant's claim is specifically set out, the aggregate amount of them all being $3,164.78, which said amount was found to be due and unpaid. It is further found that $500 is a reasonable attorney's fee, and that payment had been unreasonably delayed.

No question is made as to the amounts due appellants, nor as to their right to hold a lien therefor, provided there is property which can legally be made subject thereto. The findings further show that on November 12, 1897, the receiver filed his verified petition in the circuit court, and set out therein that the mine had been abandoned by the lessees and that they had failed to operate the same and to care for the property but had allowed the mine to become filled with water, greatly endangering the safety of its working places, and had publicly announced their intention of operating it no longer; that he had repossessed himself of the property upon hearing of its abandonment; that appellees Harder and Hafer had become the owners of the certificate of sale theretofore issued to Niblack, trustee; that the property would not likely be. redeemed; that no one except the prospective owner of the mine could afford to keep it in repair and pay the customary royalties. The prayer of the petition was for an order to lease to Harder and Hafer, during the unexpired time allowed for redemption, viz., until July 17, 1898. On November 13, 1897, the order was made as prayed. On November 29th the receiver leased the property to the parties named, in accordance with such order. Possession had been delivered to them on August 27th preceding, and it has since been operated by them. During the unexpired term of the Butts

& Rubly lease, royalties were paid under the last lease of the receiver amounting to $6,250, which sum is now in his hands. That the part of the said royalties paid during the time allowed for redemption amounted to $3,750. It is also found that when the mine passed into the possession of Butts & Rubly it was worth $12,000, and that when the receiver repossessed himself of it it was worth $22,000; that the repairs made by said lessees were reasonable and proper, and added the cost thereof to the value of the property, and were necessary to keep the mine .a going concern, and were approved by the receiver. Royalties paid by Butts & Rubly amounted to $222.68, there being $160 still unpaid. Niblack knew of appellants' claims when he bid in the property, and of the facts connected therewith. Harder and Hafer also had full knowledge of the same when they took the assignment of the certificate from Niblack, but did not at any time agree to pay such claims.

The estates of tenants for terms of years are liable for improvements made by them upon the demised premises. The lien extends to their entire interest under the lease, but does not affect a reversion of the lessor unless he, by some act of his own, has obligated his estate. Phillips Mechanics' Liens (3d ed.), §191; *Hopkins* v. *Hudson,* 107 Ind. 191.

The abandonment of the mine by the lessees, and the reëntry by the receiver, are shown. The terms of the lease authorized the court to declare its forfeiture in the event that the lessees allowed the property to become encumbered by liens, and also in the event that 60,000 tons of coal were not mined during each year. The clause as to forfeiture on account of liens as aforesaid was qualified as follows: "If any liens for labor or material should be filed on account of contracts by said Butts & Rubly, they were to give a bond with approved security for the payment of the amount that might subsequently be adjudged to be due, or on failure to do so upon notice of filing the lien, the lease might be declared forfeited upon application to the court."

The other provision under which a forfeiture might be declared was as follows: "The minimum amount of coal agreed to be mined was 60,000 tons a year, and in case of failure their right to operate the mine was to be forfeited, unless prevented from mining that amount by strikes, fires, or providential hinderances." The finding fails to show that any attempt to forfeit the lease was made by either the receiver or the court. Facts are not set out authorizing such forfeiture. It does not appear that the lessees failed to execute a bond as stipulated, nor does it appear that they failed to mine the requisite amount of coal, or that such failure if it can be inferred, was not due to one of the excepted causes. In the absence of such facts the declaration of forfeiture, had it been made, would amount to no more than a surrender. *Dobschuetz* v. *Holliday*, 82 Ill. 371, 6 Mor. Min. Rep. 108.

The facts found do show the voluntary surrender of the lease by the lessees, and the acceptance thereof by the receiver. The liens of the appellants and the right thereto were complete before the surrender was made. Their right could not thereafter be defeated by the act of the lessee in so surrendering his lease, although such surrender was accepted by the lessor. *Montpelier Light, etc., Co.* v. *Stephenson*, 22 Ind. App. 175; *Dobschuetz* v. *Holliday, supra; Gaskill* v. *Trainer*, 3 Cal. 334; *Gaskill* v. *Moore*, 4 Cal. 233; *Ellis* v. *Porter* (Utah), 29 Pac. 879.

The court had power to authorize its receiver to execute the lease in question. It did not have power to annul or revoke the contract thus made in reliance upon this order, except under the same conditions that individuals may annul or revoke contracts made by them. *Farmers Loan, etc., Co.* v. *Eaton*, 114 Fed. 14, 51 C. C. A. 640.

The appellants were entitled to a foreclosure as against the interests of the lessees. The lessor, treating the lease as one between individuals, and excluding all reference to the fact that the lessor was a receiver, acting under the

direction of the court, would, upon sale thus brought about, have been required to accept the purchaser as a tenant, subject to the provisions of the lease. The interest of the lessees in the leasehold estate, including the improvements created by them, would have passed to the purchaser. *Dobschuetz* v. *Holliday,* 82 Ill. 371, 6 Mor. Min. Rep. 108. The action of the receiver in resuming possession was subsequently approved by the court. Further steps taken are not of controlling importance. The finding shows that a lease was made to other parties. The receiver might have been directed to operate the mine directly, and the facts might have rendered it expedient not to operate it at all. The propriety of the action taken is not an issue in this appeal. That possession was taken by the receiver and that his action was approved by the court is important, in that thereafter sale could not have been made in the ordinary manner; property *in custodia legis* not being subject to sale as upon execution. *Knode* v. *Baldridge,* 73 Ind. 54; *Hatfield* v. *Cummings,* 152 Ind. 280, 285; *Royal Trust Co.* v. *Washburn, etc., R. Co.,* 113 Fed. 531.

The equity power of the circuit court invoked by this proceeding was entirely adequate to the protection of the lienor's interest. Having possession of the leasehold estate, and of the improvements made thereon, the value of which taken together is largely in excess of the amount due these workingmen, it should have directed the payment of the labor claims by the receiver. Such disposition will be just to the appellants, since it secures to them that which they have earned. It will be just to the owners of the mine, and those interested therein, since it takes nothing from them.

Judgment reversed, and cause remanded, with instructions to restate conclusions of law, and for further proceedings not inconsistent herewith.