### CORNELL v. NICHOLS & LANGWORTHY MACH. CO.

(Circuit Court, S. D. New York. May 31, 1911.)

**1. RECEIVERS (§§ 154, 162*)—CLAIMS—QUESTION—PROCEEDS—MORTGAGES—ADMINISTRATION EXPENSES.**

Where a receiver of a corporation, with the consent of the court, in order to get money with which to collect claims against insurance companies, agreed to turn over the claims to such creditors as would come in, and share the expense of collection, on condition that they should be first paid in full and that the balance should go to the general estate, neither the receiver nor a mortgagee of the insured property was entitled to claim payment of a mortgage or of expenses of the general administration of the estate out of the fund obtained as against the claims of contributing creditors.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 277, 279–282; Dec. Dig. §§ 154. 162.*]

**2. RECEIVERS (§ 200*)—COMPENSATION.**

Where a receiver of an insolvent corporation, in order to collect claims against certain insurance companies, obtained funds for that purpose from contributing creditors under an agreement to turn the claims over to such creditors on condition that they should be first paid in full from the proceeds and the balance should go to the general estate, the contributing creditors having thereafter employed the receiver to collect the claims, he was entitled to compensation for his services from the proceeds.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 397–401; Dec. Dig. § 200.*]

In Equity. Suit by Charles G. Cornell, Jr., against the Nichols & Langworthy Machine Company. Proceedings for distribution of assets in the hands of a receiver of an insolvent corporation. Claims of receiver and mortgagee overruled.

Charles P. Howland, for New York Safety Steam Power Co.
Briesen & Knauth, for Knauth, Nachod & Kuhne.

HAND, District Judge. [1] When the receiver was appointed, the assets of the corporation consisted of an equity in the half burned property and claims against many insurance companies, domestic and foreign. Soon it became apparent that the claims against foreign insurance companies were to be disputed, and that nothing could be realized without new money to prosecute the actions which should arise. That money the receiver did not have, and could not get except by fresh advances, and there was no one to advance such new

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

money but the creditors. The claims as they stood were therefore without any value at all to the estate. The receiver might have sold them for what he could realize, and the consideration he received would have been assets in his hands subject to the expenses of administration. If the purchaser had thought fit to employ him to collect the claims, he would never have thought of claiming the right of fixing such purchaser with more than the expense of collection. Nor would the relations have been in the least different, had the purchaser agreed to turn over to the receiver only a surplus from what he might collect above a fixed sum. Instead of doing this, the receiver, with the court's consent, offered to turn over the claims to such creditors as came in to share the expenses of collection upon condition that they should be first paid in full and the balance should go to the general estate. Suppose he had agreed, as he might well have done, that the claims should be prosecuted by the contributing creditors themselves, they to turn over the net surplus for administration. Had that been the contract, the contributing creditors would be surprised to hear that, before they began to pay themselves, the expenses of general administration must be met. They would quite rightly have said:

"This claim was given us to collect upon certain agreed terms, in which nothing was said about the payment of the general administration expenses. Had we not advanced our money, those expenses would have had no possible chance of being paid. It is true that the chance has proved valueless; but, even so, the general expenses are in no worse case than before. They have lost nothing, yet the receiver asks that he be allowed by implication to interpolate a term in our contract by which, although the surplus only was to belong to the estate, his expenses obtain a preference upon the money which we by our efforts only have won."

[2] In all this I think the contributing creditors would be quite right had they been collecting the claims themselves. As it is, the receiver has done so, and no one disputes that he must be properly paid for such a service. I cannot, however, see how it makes any difference as to his getting his general expenses out of this fund that he has been its collector, instead of a committee of creditors. Those expenses come from the general assets, and there are no general assets until the terms of the contract have been complied with under which this special fund has been created. The receiver can impose no part of such general expenses upon this special fund, except by interpolating an implied term in the contract, which is not reasonable in my judgment. In respect of these expenses, he stands just as he would have stood had no fresh advances of money ever been made. The same reasoning applies to the claim of the mortgagee, but with even greater force. Even were it entitled to get the whole surplus above the amount necessary to fulfill the contract with the creditors (which I do not decide), yet since the court had power to create liens prior to either mortgagee or receiver for the preservation of the property, neither mortgagee nor receiver can come ahead of the court's bargain, and compel the court to violate its word to those with whom it dealt. Thus the mortgagee is clearly out of the case, and so equally is the receiver, except by virtue of his services in respect of these particular assets. It is difficult to fix a just allowance for that work. Had

success resulted, the allowance asked would not have been too great, but success did not result. Such services are essentially speculative, by whatever name we may choose to disguise it, and are properly and necessarily speculative, provided no absolute percentage be fixed from the outset. Every one would be shocked that the lawyers should take the whole, but every lawyer knows that Mr. Winslow's services will be meanly paid by what I feel obliged to allow him. At best such allowances are a compromise between what would pay the lawyer and what would be a reasonable deduction from the client. In the case at bar, considering the fact that he has actually consumed 80 days in two trips abroad, to say nothing of other time here, an allowance of $4,500 is the least that I can in justice make him, and his allowance will be fixed at that sum. The rest of the fund will be distributed among the contributing creditors in due proportions.