**CURRIER et al. v. STAUFFER et al.**

No. 24810. April 3, 1934.

Rehearing Denied May 22, 1934.

N. E. McNeill, Hall & Thompson, and Moss & Powell, for plaintiffs in error.

Clarence M. Mills, for defendants in error.

BAYLESS, J. This is an appeal from one phase of case No. 66445, L. C. Jones, Plaintiff, v. Capitol Production Trust No. 1 et al., Defendants, pending in the district court of Oklahoma county, Okla.

Certain lien claimants, parties to the action, petitioned for the appointment of a receiver. This petition was granted and S. M. Stauffer is now receiver for the property involved in that action. This property consisted of a lease of 13/16ths interest in the oil and gas rights, certain drilling equipment on the lease, and a hole drilled to a depth of about 4,500 feet. The receiver made a contract with W. C. Currier, duly approved by the court, for the further drill-

ing of this hole in the hope of getting a producing well. Currier's compensation for drilling this well was to be $329,855, payable as follows: $164,927.50 from the first 13/16ths of the oil or gas saved and sold from this lease, after operating expenses had been paid, and $164,927.50 from 1/2 of 13/16ths of the oil and gas thereafter produced after operating expenses had been paid. Currier assigned interests in this contract, but the positions and contentions of him and his assignees are the same, and they will be referred to herein collectively as Currier. Currier drilled the hole deeper and brought in a producing well. In the meantime, and thereafter, litigation arose between Currier and his assignees (see State ex rel. Stauffer v. Halley, No. 22798, 159 Okla. 14, 12 P. [2d] 523), and between Currier and the receiver (see State ex rel. v. Chambers No. 22939[1], no opinion filed) all of which was finally adjudicated. During this period of time the proceeds from the sale of 13/16ths of the oil and gas saved and sold was, by agreement between the parties and under the supervision of the trial court, applied to the payment of Currier's obligations incurred in the drilling of the well. The proceeds of the sale of 13/16ths of the oil and gas saved and sold since that time has been paid into the hands of the receiver. The court ordered the receiver paid $2,500 as an allowance upon his compensation and the receiver's attorney paid $1,500 as an allowance upon his fee, and $200 as court costs, from the money in the hands of the receiver derived as aforesaid. Currier appeals from this order.

Currier's contentions may be stated thus: That by virtue of his contract with the receiver, approved by the court, the portions of the oil and gas saved and sold, and its proceeds after the operating expenses are paid, named as his, are his, and are not subject to charge for the payment of the expenses of the administration of the receivership estate and costs, and the court has no authority to, in effect, disturb the terms of his contract and apply the money elsewhere. The receiver's contentions are, in effect, the negative of Currier's.

The receiver at the time of his appointment found himself in charge of certain tangible property of an alleged value at that time insufficient to satisfy the liens and charges against it. As this property then stood to be administered by the receiver for the benefit of those then interested, the compensation to be paid by the receiver and the

[1]Application for writ of prohibition was denied and petition dismissed March 29, 1932. Petition for rehearing was filed April 8, 1932, and denied April 26, 1932.

expenses to be incurred by him, including attorneys fees, were undoubtedly to be classed as court costs and to be paid first.

Certain of the tangible property that came into the hands of the receiver had a speculative potential value much in excess of its then known value. This speculative potential value could only be tested out by the expensive process of drilling a well. If such a well was drilled and proved true this potential value, the value of the estate in the hands of the receiver would be greatly enhanced.

The question before us is: If the receiver entered into a duly approved contract with a third person to perform services in the drilling of this well, and resulting in the enhancing in value of the estate in his hands, for a stated compensation, can the receiver then postpone the payment of such compensation until he has been paid for his services, or can he relegate the priority of payment of such compensation, as provided in the contract, to a position of inferiority in time of payment as regards his compensation?

The receiver says yes, because to say otherwise would be to let the courts lose control of their estates, or, to phrase it as the receiver did in the oral argument, to let the court commit suicide by rendering it unable to pay the costs of its own operation. In other words, the effect of the receiver's argument is to say, regardless of the terms of a contract, it is always imputed to the parties that the law of receiverships, and especially the priority of payment of the cost of administration of the receivership estate, is known to them, and impliedly is a part of the contract.

Is this always true? Suppose, for example, that in this case the receiver had made a contract to give Currier a bill of sale to the drilling equipment for drilling this well, and the bill of sale had been put in escrow pending performance by Currier. Could it be contended that upon performance by Currier and demand for the title papers to the equipment, the receiver could reclaim these papers and sell the property and deliver the balance to Currier as fulfillment of the receiver's obligation to the contract? Or, suppose that the receiver had in the estate the lease, subject to many unpaid liens and charges, and the sum of $5,000 in cash: and, he then and there, under an approved contract, paid to Currier, in advance, this $5,000 to drill the well, and the well had been drilled in as a dry hole, thereby destroying the value of the lease, could the receiver then get back from Currier enough of the $5,000 already paid to pay himself and his attorney? In our judgment, no.

But the receiver says he should not be permitted to contract to this end or result. Of course, this whole matter is being presented to us as if there will never be anything in this estate from which the receiver will be able to pay himself his compensation. We do not know whether this is or will be true, but we do not think that it has any material bearing upon the answer to this question.

According to 53 C. J. 256, under the subtitle "Agreement of Receiver", 53 C. J. 383, sec. 622, and notes 4 and 8, and 23 R. C. L. page 136, sec. 144 and note 14, it is not unknown that a receiver may agree to serve without compensation, or may limit the amount of his compensation in advance, or may waive its priority for payment in favor of other claims. In addition to this we nowhere find that such a contract, even if it results in a court unduly hampering itself, is contrary to public policy.

We are cited the case of Cornell v. N. & L. Co., 189 Fed. 556, and the decision on appeal of the Circuit Court of Appeals of the Second Circuit in 201 Fed. 320. In this case a receiver was named for a machine company which had recently suffered the loss by fire of most of its tangible property. This lost property was covered by policies of insurance with various insurance companies located in foreign countries, which companies denied liability. The receiver, being without funds to prosecute the claims upon these disputed policies, by a contract duly approved by the court, agreed that if any of the creditors of the machine company would advance the funds with which to prosecute these claims, such contributors should be allowed from the proceeds received from said policies all of their contributions and their claims in full; and that only the surplus, if any, should belong to the receivership estate. It appears that certain of the creditors contributed the necessary funds and used the receiver as their collecting agent, for which he was paid $4,500. Yet the receiver was made to pay the contributing creditors their advances and claims in full before he was allowed any commission as receiver. In addition to this, his commission was allowed against the surplus only and computed upon the basis of the surplus only. In that case the Circuit Court of Appeals said:

"The general creditors could only share in the amount received from the foreign in-

surance in the event that the amount was in excess of the claims of the contributing creditors and then only in the surplus over that amount. The receiver could only receive commissions on that surplus. He cannot charge the general expense of administration upon a special fund which was procured by the efforts and at the expense of the contributing creditors. The fund thus created with the sanction of the court cannot be depleted in any manner and must go undiminished to the creditors whose contributions created it."

Other cases are cited in which courts have approved receivers' contracts with third persons, which contracts thereafter developed unfavorably to the receiver and to the estate, but, nevertheless, strict compliance therewith on the part of the receivers and their estates was exacted. It is said in 53 C. J. 157:

"It is within the power of a court to authorize its receiver, in administering the property committed to his charge, to enter into contracts for the purposes of such administration and the best interests of the persons ultimately entitled. * * * Contracts so duly authorized and entered into have been said to be in reality contracts of the court, which cannot be annulled or revoked by the court except upon the same conditions as are applicable to the breach of his engagements by a private individual; and the receiver cannot modify their terms. It is the duty of the court to see that such contracts are performed by the receiver, and not merely provide a forum in which the other contracting party may seek his remedy for nonperformance; and the assets of the estate are liable for the due execution of the contracts. * * * One contracting with the court through the receiver, or the assignee of such a party, becomes in effect a party to the receivership proceedings in respect of the court's future dealings with him and his rights under the contract."

In the case of McAnally v. Glidden, 30 Ind. App. 22, 65 N. E. 291, it is said:

"A court has no power to annul or revoke a lease properly made by a receiver under its order, except under the same conditions that they would empower individuals to annul or revoke a contract."

See, also, Farmers, etc., Trust Co. v. Eaton, 114 Fed. 14, and the case of Bank of Commerce v. Central C. & C. Co., 115 Fed. 878 (C. O. A. Eighth Circuit), in which is discussed the solemn obligation which rests upon a court to respect and enforce its own contracts.

We have heretofore adverted to the fact that the receiver contends that if authority to so contract exists in other jurisdictions, it ought not to be given sanction in this state. In all of the cases above cited, much is said of the care and caution which a court should exercise in making contracts with other persons, or in approving the contracts of its receivers with third persons; but, once made, such contracts are in all respects contracts, and must be construed, executed, and enforced according to the law of contracts.

Can the contract before us reasonably be construed to express an agreement on the part of the receiver to waive the priority of the payment of his compensation and his expenses, including attorneys fee, in favor of Currier's compensation for drilling the well? Resort to the contract will answer this question. The contract is lengthy, but it is not necessary to set out more than certain paragraphs thereof, which are as follows:

" * * * 3. It is mutually agreed between the parties to this contract that for and in consideration of the statements set out in paragraphs 1 and 2, and for the further consideration of $329,855, payable in oil in the following manner, to wit: $164,927.50 to be paid out of the first 13/16ths of oil and/or gas produced and saved from said lease, after operating expenses have been paid; then to be paid 1/2 of the 13/16ths of the oil and/or gas produced and saved, after operating expenses have been paid, until lien creditors have been paid, after which all of the 13/16ths of oil and/or gas produced and saved, less operating expenses shall be paid contractor, until the full amount of $329,855 shall have been paid to the contractor.

" * * * 5. All of the oil and/or gas that may be produced or run from the well on said lease, after said well has been completed by contractor, in accordance with the contract, shall be run into pipe lines or other purchasing agency, under the direction of the contractor, the proceeds to be divided by said pipe line or purchasing agency according to the interest of the parties hereto and this agreement shall operate and be effective as a division or transfer order between the parties hereto as their interest may appear until the regular division or transfer order is signed, in case the same is necessary or required.

"6. It is mutually agreed, and hereby stipulated between the parties hereto that the contractor shall have full drilling and operating control of said well and in the production of oil and/or gas, and a first lien on oil and gas until he has been paid the full consideration of this contract, at which time the contractor agrees to deliver to the receiver in good condition, with reasonable wear and tear, the said well completed and equipped, free of incumbrance in so far as

his operation is concerned in completing this well."

By the terms of the first paragraph, the "first" 13/16ths of the oil and gas saved and sold with one exception only, operating expenses, which are properly chargeable to the receiver, are set aside to Currier. If operating expenses had been intended to cover general administration expenses, it could have been easily so stated. In addition, in view of the fact that Currier is charged with direction of the operation of the well, and the receiver has only the right to visit and inspect, it does not occur to us proper to consider administrative expense as operating expense. By the terms of the second paragraph above quoted, it is certain that the parties contracted to divide the oil and gas or their proceeds as soon as they were in the possession of the purchasing agency. It is also provided that such contract should serve as a "division order," that is, authority on the part of the purchasing agency to pay this oil or its proceeds to Currier. By the terms of the third paragraph, Currier is given a first lien on the oil and gas produced until he is paid in full. By the terms of the second and third paragraphs, the receiver relinquishes control, possession (except to visit and inspect) and operations of the lease in favor of Currier in the event of a well. Therefore, in our opinion, it is plain that Currier contracted against every possible contingency which might oust him from his preferred right to the oil and gas saved and sold, except operating expenses, until he was paid.

We therefore hold that the court erred when it ordered the receiver paid his ordinary compensation and expenses from the money in the hands of the receiver arising from the sale of 13/16ths of the oil and gas sold belonging to Currier under the contract.

Much argument is made upon the question of the litigation between Currier and his assignees, and between Currier and the receiver, of added duties and expenses performed and incurred by the receiver as a result thereof, and all other matters which might be the basis for an adjustment of rights and accounts between the receiver and Currier, aside from the ordinary administration of a receivership estate. The order under consideration does not purport to take these matters into account, but, as we view it, is an allowance to the receiver for compensation and expenses upon the ordinary basis. It is possible that knowledge on the part of the trial court of these extraordinary activities may or may not have caused the court to increase the allowance made,

but, if so, it does not unequivocally appear, and is not capable of separation.

Therefore, the judgment of the trial court is vacated in so far as it attempts to charge the ordinary administration expenses of the receivership estate against the money to which Currier is entitled under the contract as compensation for the drilling of said well.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL and BUSBY, JJ., concur.