.Rebecca L. BERNHARDT and Neal Hoff, Plaintiffs and Appellees,

v.

Stella RUMMEL, Defendant and Appellant,

and

The First National Bank and Trust Company of Dickinson, Defendant and Appellant.

Civ. No. 9942.

Supreme Court of North Dakota.

Dec. 22, 1981.

Bair, Brown & Kautzmann, Mandan, for defendant and appellant Stella Rummel; argued by Dwight C. H. Kautzmann, Mandan.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant and appellant First Nat. Bank and Trust Co. of Dickinson; argued by Ward M. Kirby, Dickinson.

Freed, Dynes, Malloy & Reichert, Dickinson, for plaintiffs and appellees; argued by George T. Dynes, Dickinson.

PAULSON, Justice.

This case involves two separate appeals, one by the appellant Stella Rummel ["Stella"] and the other by the appellant First National Bank and Trust Company of Dickinson ["the Bank"]. Stella appeals from the judgment of the District Court of Stark County which judgment resulted from a jury verdict against her for taking and damaging property of the plaintiffs; and the Bank appeals from the judgment and from the court's order denying its motion for judgment notwithstanding the verdict. We affirm with respect to Stella Rummel and reverse with respect to the Bank.

The plaintiffs-appellees in this case are Rebecca L. Bernhardt and Neal Hoff, husband and wife. For convenience in this opinion, we will refer to them collectively as the appellees.

This case arises out of the divorce of Stella Rummel and Gilbert Rummel which was tried by Honorable Norbert J. Muggli, Judge of the District Court of Stark County. Because it was a contested divorce action, Judge Muggli, in the Rummels' divorce judgment dated August 18, 1977, appointed the Bank as a receiver for the purpose of dividing the Rummels' property by a sale of all of their assets and a distribution of the funds to them. This judgment also provided, among other things, that Stella would receive any household goods, furniture, and furnishings in the Rummel home except for "any built-in appliances, furniture or furnishings which shall remain with and be included in the sale of the farm home owned by the parties."

On October 7, 1977, a hearing was held by the trial judge on the receiver's motion and an order was issued, dated October 20, 1977, providing, in paragraph 4 thereof:

"4. That Stella Rummel shall have and receive forthwith, having selected the same, the parties' 1974 Mercury automobile, and all household goods save and excepting the refrigerator, stove and dishwasher, the same being part of the house, to be sold with the parties' home pursuant to this Court's Order;"

The receiver bank advertised the real estate for sale in various area newspapers and the auction sale was held on April 11, 1978. The earnest money agreement to be entered into by the successful bidders was available for inspection prior to the sale.

The appellees were the highest bidders on the real estate in question, which involved the Rummels' home. The appellees entered into the earnest money agreement on April 11, 1978, the date of the sale. The sale was subject to approval by the court and was subsequently approved and a receiver's deed was delivered to the appellees on May 11, 1978, when the full price for the property had been paid.

The earnest money agreement provided, among other things, that it was understood by the parties that the seller held the real property as a receiver and that the purchaser had inspected the property. It further provided that:

"ENTIRE CONTRACT: This agreement constitutes the entire contract between the parties hereto and there are no other undertakings, representations or warranties, oral or written, relating to the subject matter hereof, and neither party has relied upon any verbal representations, agreements or undertakings not set forth herein, whether made by any agent or party hereto. This agreement may not be changed, modified or amended, in whole or in part, except in writing signed by all parties."

The earnest money agreement contained no reference to a stove, refrigerator, or dishwasher.

At the sale, however, Peter D. Mesling, who was then the trust officer of the Bank, read the October 20, 1977, order aloud as part of the sale procedure, including that portion which provides that the stove, refrigerator, and dishwasher were to be sold with the home. Testimony about the reading aloud of the order was admitted at trial over objections by the Bank that such testimony violated the parol evidence rule and that the earnest money agreement was the only contract between the Bank and the appellees.

On the Bank's motion a hearing was held on May 23, 1978, at which hearing the Bank delivered the proceeds from the sale to Stella and Gilbert Rummel, the court approved the account and acts of the receiver, and discharged the Bank from any and all further liabilities or responsibilities. The written Order Approving Acts of Receiver and Discharge of Receiver was executed on June 20, 1978.

The appellee Neal Hoff was present at the May 23, 1978, hearing, as was appellees' counsel. The parties to the action stipulated that Stella could remain in the Rummel house until twelve o'clock noon on May 26, 1978. The appellees made no objection.

When the appellees arrived to take possession of the property on May 26, 1978, they found a number of items missing, as well as items of damage. The missing items included a Sears Kenmore stove, the water heater, a china cabinet, some metal cupboards in the basement, a carpet from a basement bedroom, a chandelier, and some curtain rods. In addition, one of two water wells was inoperative; a doorknob on a Quonset was damaged; fires were found burning in the yard; and a soiled Kotex sanitary napkin was found wedged under the bathroom sink. Appellees also allege that Stella damaged a door and some woodwork in the house.

Stella testified that she did take a stove, water heater, metal cabinet, china cabinet, carpet, curtain rods and brackets, and that she took them upon the advice of her attorney and not to intentionally spite or oppress Neal Hoff or Rebecca Bernhardt. When she left the family home on May 26, 1978, she left a refrigerator, dishwasher, and stove. The stove that she left was a Hotpoint brand stove, which was located in the basement of the house. The stove she took was located upstairs in the kitchen and was of a color which coordinated with the rest of the kitchen.

When the appellees took possession of the house on May 26, 1978, they saw that items were missing and that the house had been damaged. That same day the appellees called the Bank and a representative from the Bank came to the premises and noticed that the various items were missing. Several days later, but prior to June 1, 1978, the appellees contacted Mr. Mesling, the trust officer of the Bank as well as its vice president at that time, to notify him of the problem. Mr. Mesling thereupon contacted the Bank's legal counsel who suggested that the Bank had been discharged on May 23, 1978, and that the appellees should contact the state's attorney about the possibility of a criminal action against Stella for theft, whereupon the appellee Neal Hoff, on or about October 12, 1978, charged Stella in justice court with a class C felony, alleging theft of certain personal property Hoff claimed to have purchased at the receiver's sale. A preliminary hearing was held on April 21, 1979, and the charges were dismissed for lack of probable cause on October 3, 1979.

Subsequently, in April of 1980, the appellees filed a civil complaint in the District Court of Stark County against Stella for taking and damaging of property and against the Bank for breach of contract. The appellees' complaint against Stella was for taking various fixtures to which she was not entitled, and for willful and malicious damage to the house and adjacent property. They also sought damages for personal injuries because of mental anguish and severe emotional distress. Their complaint further stated that in reliance upon their moving into the newly purchased home, the appellees contracted to sell their mobile home. However, when they saw that they could not immediately move into the new house as anticipated it was necessary to cancel the sale of their mobile home. When the appellees were later able to move into the new home, they sold their mobile home but the delay caused them to lose the benefit of the earlier contract. For the loss of the earlier contract the appellees sought damages in the amount of $1,500.

The plaintiffs-appellees' complaint sets forth their claim against the Bank based upon a breach of contract as follows:

"That the claim of the Plaintiffs against the Defendant, First National

Bank and Trust Company of Dickinson, is based upon the failure of said Bank, as Receiver, to deliver the house in good condition, as represented and as intended by the agreement between the Plaintiffs and said Bank. That the value of the property actually delivered to the Plaintiffs by the Bank was worth less than the property as previously represented and agreed, all to the Plaintiffs' damage and detriment in the amount of Four Thousand Two Hundred Twenty-six and No/100 ($4,226.00) Dollars. No claim herein is made against said Bank for any of the other damages claimed against the Defendant, Stella Rummel."

In response to the appellees' complaint, Stella counterclaimed against Neal Hoff for malicious prosecution and harassment. Stella also cross-claimed against the Bank, claiming that she made no warranties as to the condition of the property because she was not privy to or a party to the sale between the appellees and the Bank. She requested that if she be adjudged liable to the appellees, such liability was the responsibility of the receiver Bank because the Bank was privy to the contract with the appellees.

The Bank answered the appellees' complaint, denying the allegations and specifically alleged that it was acting as a court-appointed receiver and that an order was entered approving the acts of the receiver and discharging such receiver.

Before trial the Bank made a motion for summary judgment which was denied. The matter was tried before a 12-person jury in the District Court of Stark County, the Honorable Lyle G. Stuart, presiding, on December 16, 1980. Prior to submission of the case to the jury, objections were made to the jury instructions. The Bank made objections to the verdict form.

The jury returned its verdict on December 19, 1980, which verdict assessed damages against the Bank in the amount of $600 for breach of contract; $1,200 against both appellants jointly and severally for damages; $2,500 against Stella for outrageous conduct; and $1,500 for the taking of appellees' property.

Judgment was entered on January 2, 1981, for the appellees and against the appellants jointly and severally for $1,200, against Stella for $4,000, along with costs in the amount of $441.11 against both appellants jointly.

Because the appeals by the Bank and Stella involve separate causes of action and separate issues, we will treat them separately in this opinion.

## THE APPEAL OF STELLA RUMMEL

ISSUES:

1. Did the trial court have subject matter jurisdiction over the proceedings?

2. Did the trial court err when it refused Stella Rummel's Requested Jury Instructions Nos. 24, 25, and 26?

3. (a) Did the trial court err when it instructed the jury on fraud?

   (b) Did the trial court err when it instructed the jury that the plaintiffs were entitled to a stove, refrigerator and dishwasher as well as all built-in appliances, furniture and furnishings in addition to the specifically mentioned appliances?

   (c) Did the trial court err when it refused to instruct the jury on forced sale?

   (d) Did the trial court commit error when it instructed on probable cause needed for Neal Hoff to initiate a criminal prosecution?

4. Is the verdict dismissing the counterclaim of the defendant erroneous and contrary to the evidence produced at trial?

5. Is the verdict dismissing the cross-claim of the defendant Rummel erroneous and contrary to the jury finding that the First National Bank and Trust Company breached its contract with the plaintiffs?

6. Is the judgment as entered contrary to the jury verdict to the prejudice of Stella Rummel?

## 1) DID THE TRIAL COURT HAVE SUBJECT MATTER JURISDICTION?

In her reply brief Stella seeks a dismissal of the entire action, based on her contention that the trial court did not have subject matter jurisdiction over the proceedings. The receivership proceedings were before Judge Norbert J. Muggli, district judge of the District Court of Stark County; and this appeal is from the civil action tried in the same court before Judge Lyle G. Stuart.

Stella essentially contends that the appellees, as a result of their contract with the receiver, became parties to the receivership proceedings insofar as such contract and rights thereunder are concerned, citing *Currier v. Stauffer*, 168 Okl. 334, 32 P.2d 871 (1934); *Security Trust Co. of Austin v. Lipscomb County*, 142 Tex. 572, 180 S.W.2d 151 (1944). She further cites *Elkins v. Davis Colliery Co.*, 113 W.Va. 279, 167 S.E. 698 (1933), for the proposition that creditors of a receiver must look to the property in the custody of the court, and they have no claim whatsoever on any of the parties to the litigation. They support their argument with the rule stated in *Riehle v. Margolies*, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669; *Chicago Title and Trust Co. v. Fox Theatres Corporation*, 69 F.2d 60, 91 A.L.R. 991, that the court, once it appoints a receiver of the property of a debtor corporation, has jurisdiction of the assets of the receivership and all questions incident to the preservation, collection, and distribution thereof.

In the instant case the appellees did not petition Judge Muggli of the District Court of Stark County, who appointed the receiver, to reopen the receivership to determine the claims being made by them. Hoff filed criminal charges against Stella which were unsuccessful and subsequently sued Stella and the Bank in the District Court of Stark County.

We believe, however, that the above facts do not deny the jurisdiction of the district court in the instant case against Stella. While it is true that the appellees became a party to the receivership proceedings insofar as their contract and rights under it are concerned, this does not mean that an action pursued outside of their contract has to be pursued within the receivership proceedings. The appellees in the instant case make no claim against Stella based upon contract. Theirs is a tort claim against her personally.

The Second Circuit Court of Appeals, in *Chicago Title and Trust Company v. Fox Theatres Corporation*, 69 F.2d 60, 61 (2d Cir. 1934), explains that:

> "Distribution of the assets necessarily involves a prior determination of the existence and amount, that is, a liquidation, of the claim of each creditor who is to participate in the distribution."

The Court further explains in *Chicago Title and Trust Company, supra* 69 F.2d at 61:

> "Liquidation of a claim is strictly a proceeding in personam; it does not directly deal with receivership assets, and there is no inherent reason why adjudication of the liability of the debtor might not be had in a court other than that which controls their distribution. *Riehle v. Margolies*, 279 U.S. 218, 224, 49 S.Ct. 310, 312, 73 L.Ed. 669; *Hatch v. Morosco Holding Co.*, 19 F.2d 766."

*Riehle v. Margolies, supra* 279 U.S. at 224, 49 S.Ct. at 312, points out:

> "That an order which results in the distribution of assets among creditors has ordinarily a twofold aspect. In so far as it directs distribution, and fixes the time and manner of distribution, it deals directly with the property. In so far as it determines, or recognizes a prior determination of the existence and amount of the indebtedness of the defendant to the several creditors seeking to participate, it does not deal directly with any of the property. The latter function, which is spoken of as the liquidation of a claim, is strictly a proceeding *in personam*. Of course, no one can obtain any part of the assets, or enforce a right to specific property in the possession of a receiver, except upon application to the court which appointed him. *Lion Bonding & Surety Co. v. Karatz*, 262 U.S. 77, 88–9 [43 S.Ct.

480, 484, 67 L.Ed. 871.] . . . There is no inherent reason why the adjudication of the liability of the debtor *in personam* may not be had in some court other than that which has control of the *res*. It is only necessary that in the receivership proof of the claim be made in an orderly way, so that it may be established who the creditors are and the amounts due them."

In the instant case we have a claim against Stella which has arisen after the property in question was distributed by the receiver Bank on May 23, 1978. In the terms of the cases cited above, what we have is a liquidation of a claim after the assets of the receivership have been distributed and the funds disbursed. The appellees' claim is not an action for specific property in the receivership but rather it is for conversion and for damages to their property, and this court has recognized a difference between the two causes of action. It is stated in *More v. Western Grain Co.*, 31 N.D. 369, 153 N.W. 976, 979 (1915), that "an action to recover damages for conversion is entirely different from an action to recover possession of property".

We note that the instant case does not involve a receivership for the purpose of liquidating creditors' claims and establishing their priority to dwindling assets as would be the case in a bankruptcy receivership or the liquidation of a corporation. The purpose of the receiver in the Rummels' divorce was to sell this property in order to change the form of the assets from tangible property to cash, in order to make a property division. *See Rummel v. Rummel*, 265 N.W.2d 230, 236 (N.D.1978).

At the hearing on May 23, 1978, when the court approved the final account of the receiver and discharge of receiver the Bank was ordered by the court to distribute all of the funds in its possession to the parties and Stella was given a check representing her share of the assets. We believe, therefore, that the appellees were not creditors of the receivership entitled to participate in the distribution of assets, as envisioned by the cases cited by Stella, because the claim arose and was liquidated after distribution of the proceeds from the sale by the court and the money was in the hands of Stella and Gilbert Rummel.

For the reasons stated in this opinion, we believe that the appellees' claim is not against the assets of the receivership but, rather, is against Stella personally for conversion and, consequently, that the trial court had subject matter jurisdiction over the appellees' claim against Stella Rummel. However, our conclusion with respect to Stella does not necessarily apply to the appellees' claim against the Bank because the appellees' claim against the Bank is pursuant to their contract with the Bank, as receiver. We will discuss the appeal by the Bank in the second part of this opinion. At this point we will begin our review of the remaining issues raised by Stella.

■ Stella's issues, Nos. 2 and 3, raise various objections to the jury instructions. With respect to jury instructions, it is stated in *Welken v. Conley*, 252 N.W.2d 311, 317 (N.D.1977)

"We have repeatedly held that even if an error in the instructions is committed by the court, if the effect of the entire instructions, when read as a whole, is to outline the issues in the case fairly and correctly, the improper instruction will not be considered prejudicial error. See, for example, *Haider v. Finken*, 239 N.W.2d 508 (N.D.1976)."

In *Welken, supra* 252 N.W.2d at 318, this court discussed Rule 51(c) of the North Dakota Rules of Civil Procedure, which involves exceptions to jury instructions, as follows:

"In *Rau v. Kirschenman*, 208 N.W.2d 1 (N.D.1973), we indicated that Rule 51(c) is not an absolute rule, and should not be applied inflexibly where manifest injustice would be a likely result. While acknowledging that relief from the Rule should be provided for in exceptional circumstances, we carefully limited such relief to those instances where the error in the instruction is so plain, fundamental, and highly prejudicial that our failure to consider the error would result in a mis-

carriage of justice. See also, *Nokota Feeds, Inc. v. State Bank of Lakota*, 210 N.W.2d 182 (N.D.1973)."

## 2) DID THE TRIAL COURT ERR IN REFUSING STELLA'S INSTRUCTIONS NOS. 24, 25 and 26?

The last sentence of Stella's Requested Jury Instruction No. 25 states:

"Furthermore, creditors of a receiver must look for payment to the property in the custody of the Court, and they have no claim whatever on the parties to the litigation, Gilbert and Stella Rummel."

There is no question but that Stella took various items which had been sold by the Bank to the appellees. The complaint against Stella is for property taken and damages done to the house. Her Requested Jury Instruction No. 25 is an attempt to shift the responsibility to the Bank for her taking of property, Stella's argument being that the jury found the Bank to have breached its contract with the appellees and that it is impossible for Stella to be jointly liable for any damages that may or may not have been caused by breach of the contract between the appellees and the Bank. We are unpersuaded by this argument, however, because it fails to consider that it was Stella's taking of the property which caused the appellees to receive less than what they had paid the Bank for. Therefore, it was not error for the trial court to deny Stella's Requested Jury Instruction No. 25.

Stella's Requested Jury Instruction No. 26 involves the doctrine of *caveat emptor*. Although it is a correct statement of the law, it was properly refused and not applicable to the cause of action against Stella. The appellees point out in their brief that they do not contest the fact that they were purchasing no more than Gilbert Rummel and Stella Rummel's interests in the property; nor do they contest that they were to take the property and appliances in the condition in which they are normally found. We agree with the appellees' argument, however, that *caveat emptor* does not envision, after the sale, a taking of the property by the person who was in possession of it.

Stella's Requested Jury Instruction No. 24 contains a definition of harassment. In her counterclaim for malicious prosecution Stella alleges that Neal Hoff initiated the criminal action against her for the purpose of harassment and that his action was a willful and malicious prosecution against her. Stella's brief points to her testimony that she was afraid of Neal Hoff; and her brief points also to the testimony of Sister Anita Wolff, Stella's professional counselor, that Stella was experiencing situational stress, depression, and anxiety. We believe, however, that failure to include a definition of harassment in the jury instructions was not prejudicial error because Stella's counterclaim against Neal Hoff for malicious prosecution is properly covered in the court's instructions and because the entire instructions, read as a whole, outline fairly Stella's claim against Neal Hoff. The jury verdict indicates that the jury found no merit in Stella's claim for malicious prosecution for which harassment was the alleged purpose. We believe that the absence of a definition of harassment was not prejudicial to an extent meriting a reversal in the instant case.

## 3(a) DID THE TRIAL COURT ERR WHEN IT INSTRUCTED THE JURY ON FRAUD?

Stella claims as error the trial court's inclusion of a definition of fraud and an instruction that punitive damages can be awarded in the jury's discretion if they were to find that Stella was guilty of malice, oppression, or fraud. Her argument is that the word "fraud" causes a reaction against her of prejudice and places her at a disadvantage. She further points out that she never defended a fraud action and that the word "fraud" never arose in the course of the trial and, as a result, she was surprised by the instruction and had not prepared any requested instruction to counter the fraud instruction. Stella also stresses that fraud is required to be pleaded with particularity. *See* Rule 9(b), N.D.R.Civ.P., and that it was not even pleaded in this

case. The inclusion of the definition of "fraud" and the use of the word in the instructions, nevertheless, was harmless error.

The appellees were seeking punitive damages, which may be awarded in cases of "oppression, fraud, or malice", as provided in § 32–03–07, N.D.C.C. The allegation in the complaint concerning punitive damages mentions intentional, oppressive, and malicious conduct, but does not specifically allege fraud. However, the jury awarded no punitive damages and any error committed by including the word "fraud" in the instructions was harmless error.

3(b) DID THE TRIAL COURT ERR WHEN IT INSTRUCTED THE JURY THAT THE PLAINTIFFS WERE ENTITLED TO A STOVE, REFRIGERATOR, AND DISHWASHER, AS WELL AS ALL BUILT–IN APPLIANCES, FURNITURE, OR FURNISHINGS?

■ In instructing the jury that the plaintiffs [appellees] were entitled to a stove, refrigerator, and dishwasher, as well as all built-in appliances, furniture, or furnishings, the court was referring to two portions of orders that had been issued in the Rummels' divorce which defined what was to be included with the house. The judgment of divorce, dated August 18, 1977, states in pertinent part:

"The Defendant Stella Rummel shall have the first right to select on the same terms the 1974 Mercury Marquis automobile owned by the parties and any of the household goods, furniture and furnishings except any built-in appliances, furniture or furnishings which shall remain with and be included in the sale of the farm home owned by the parties."

A subsequent order by Judge Muggli, dated October 20, 1977, states, in pertinent part:

"That Stella Rummel shall have and receive forthwith, having selected the same, the parties' 1974 Mercury automobile, and all household goods save and excepting the refrigerator, stove and dishwasher, the same being part of the house, to be sold with the parties' home pursuant to this Court's Order;"

In addition, the Bank acknowledged that it specifically announced at the sale that the refrigerator, stove, and dishwasher were to be sold with the house. The above-quoted paragraph of the October 20, 1977, order was read aloud to all bidders at the sale.

Stella contends that the October 20 order was intended to change the provisions of the divorce judgment concerning the built-in appliances, furniture, and furnishings. She argues that by instructing the jury that appellees were entitled to all the built-in appliances, furniture, and furnishings, the jury was misled as to what they could find, if anything, as a result of the breach of the contract between the appellees and the Bank, or as to what they could find as to any wrongful conversion by Stella.

Our reading of the quoted portions herein of the August 18, 1977, judgment and the October 20, 1977, order is that the October 20, 1977, order supplements the judgment and explains that the refrigerator, stove, and dishwasher are to be sold with the house as if they were fixtures, although they are not fixtures in the technical sense. See § 47–01–05, N.D.C.C., "Fixture" defined.

If we were to accept Stella's interpretation of this issue that the October 20 order completely supersedes the provisions of the August 18 judgment, then it would follow that Stella was entitled to take any fixtures and built-in furniture and appliances except the stove, refrigerator, and dishwasher. We refuse to accept such an interpretation based on the facts of this case and our statutes which provide that fixtures are part of the real estate. See §§ 47–01–03 and 47–01–05, N.D.C.C.

3(c) DID THE TRIAL COURT ERR WHEN IT REFUSED TO INSTRUCT THE JURY ON FORCED SALE?

■ Stella objected to the trial court's failure to give North Dakota Jury Instruc-

tion No. 852 in its entirety.[1] The portion of such instruction omitted which Stella wanted included in the trial court's instructions is as follows:

"Similarly, the amount realized by the sale of such goods by a forced sale, such as a sheriff's sale, is no criterion as to its reasonable value or fair market value."

We do not believe that the omission of the above language from the trial court's instructions was error. All of the positive statements in No. 852, NDJI, were given to the jury. The omitted portion is an indication of what market value is not, rather than what it is. In addition, none of the specific items of property involved in the instant case were sold for a particular amount, but, rather, were included in the sale of the house. The evidence in this case on the market value of the items in question is from the opinions of those persons familiar with the individual items involved. Therefore, the instructions as presented properly informed the jury as to determining fair market value.

**3(d) DID THE TRIAL COURT ERR WHEN IT INSTRUCTED ON PROBABLE CAUSE NEEDED FOR NEAL HOFF TO INITIATE A CRIMINAL PROSECUTION?**

■ The instruction on this issue given by the trial court is taken verbatim from No. 401, NDJI. Stella argues that No. 107, NDJI is the only instruction that should have been given because Neal Hoff commenced the criminal prosecution against Stella, based on the advice of the state's attorney, who was also the attorney for the Bank.

We do not consider the instructions as given to be prejudicial error. The Note at the bottom of No. 107, NDJI, states:

"This instruction should be given in any case where the Defendant [who is

Neal Hoff, in this case], having the burden of persuasion, seeks to establish the absence of malice or the presence of probable cause by advice of counsel."

It is clear from the above language that No. 107, NDJI, would have properly been requested by Neal Hoff, the defendant to Stella's counterclaim. The absence of an instruction regarding the initiation of a criminal prosecution on the advice of counsel was, however, not prejudicial to Stella because such instruction is for purposes of a defense against a charge of malicious prosecution.

**4) IS THE VERDICT DISMISSING THE COUNTERCLAIM OF STELLA ERRONEOUS AND CONTRARY TO THE EVIDENCE PRODUCED AT TRIAL?**

■ Stella argues that the jury improperly dismissed her counterclaim against Neal Hoff for malicious prosecution because she proved all of the elements by a preponderance of the evidence. Stella argues that she proved Neal Hoff initiated the prosecution with malice. Her argument is that she proved that Neal Hoff did commit a wrongful and unlawful act willfully and deliberately which the jury can infer to be malicious. *Shoemaker v. Sonju*, 15 N.D. 578, 108 N.W. 42 (1906); *Redahl v. Stevens*, 64 N.D. 154, 250 N.W. 534; *Mahanna v. Westland Oil Co.*, 107 N.W.2d 353 (N.D.1960). The wrongful act she claims to have proved is that Neal Hoff lied in the affidavit in support of his criminal complaint. Neal Hoff stated in his affidavit that he obtained possession of the house on May 11, 1978, and that Stella refused to turn over possession of the house at that time. Stella also points out that one of the seven items listed on the affidavit as stolen was a sewer snake which belonged to Gilbert Rummel and not to Neal Hoff.

---

1. North Dakota Jury Instruction 852 states:
"REASONABLE VALUE OR FAIR MARKET VALUE

"The 'reasonable value' or 'fair market value' of personal property, at any given time, is the amount which a willing buyer would pay and a willing seller would accept, neither being obligated or compelled to buy or sell. In determining the reasonable value or fair market value of

personal property at any given time, the price agreed to be paid by the buyer of goods [under a conditional sales contract] is no criterion with regard to its reasonable value or fair market value at some subsequent time when the property is in used or secondhand condition. Similarly, the amount realized by the sale of such goods by a forced sale, such as a sheriff's sale, is no criterion as to its reasonable value or fair market value."

Stella was required to prove that Neal Hoff instituted the criminal prosecution with malice and without probable cause. *See Redahl v. Stevens*, 64 N.D. 154, 250 N.W. 534, 535 (N.D.1933). We believe that the facts are such that the jury could conclude that Hoff acted with probable cause and without malice.

The fact that one of the seven items listed in Hoff's affidavit belonged to Gilbert Rummel and not to Hoff does not conclusively establish the prosecution to be malicious. The allegation that Hoff was to receive possession of the house on May 11, 1978, is unrelated to the issue of whether or not Stella took property belonging to Neal Hoff.

The evidence is clear that Stella took a number of items that had been sold to the appellees and, consequently, that did not belong to her. She admits to having taken the Sears Kenmore stove, the water heater, the chandelier, the china cabinet, the steel cabinets, and the bedroom carpeting.

Stella's argument that Neal Hoff committed a wrongful and unlawful act willfully and deliberately in connection with the criminal charge was not accepted by the jury and she did not sustain her burden of proof and we believe the facts are such that reasonable men could conclude that Neal Hoff acted without malice and with probable cause. The credibility of witnesses and the weight to be given their testimony are questions for the jury. *Mahanna v. Westland Oil Co.*, 107 N.W.2d 353, 358 (N.D. 1960). Therefore, the jury's dismissal of Stella's counterclaim against Neal Hoff is not erroneous.

## 5) IS THE VERDICT DISMISSING THE CROSS–CLAIM OF STELLA AGAINST THE BANK ERRONEOUS?

█ Stella's argument under this issue is that if the Bank breached its contract and did not deliver the property to the appellees as the jury found, then the damages from a taking of property must be attributable to the Bank. We cannot accept this argument in the light of the facts and circumstances surrounding the instant case. The appellees' complaint against the Bank is for a breach of contract, i.e., failure to deliver property purchased by the appellees. It is clear from the evidence that the Bank did not take part in the taking of any property or the damaging of property.

The argument raised in Stella's brief is that the damages for the taking of property must be attributable to the Bank because:

"... the bank must be able to perform the contract if they breached it. If they were unable to perform it, the defense would have been inability to perform. That defense was never raised. If they could perform, then they wrongfully converted the property and stand accountable to the Plaintiffs [for the taking of property] ...."

We do not accept this argument because it would impose liability on the Bank for the taking of property—property that Stella admits to having taken—because the Bank did not argue that it was unable to deliver that property. The fact is clear that the Bank could not deliver it because Stella had taken it. The appellees' brief explains that their theory of the Bank's liability is not for taking or damaging of property.

Based on the above facts, the dismissal of Stella's cross-claim against the Bank was not erroneous.

## 6) IS THE JUDGMENT ENTERED CONTRARY TO THE JURY VERDICT AND, IF SO, IS THAT PREJUDICIAL TO STELLA RUMMEL?

█ Stella's claim that the judgment entered is contrary to the jury verdict is based upon the fact that the judgment omitted the jury findings to Questions Nos. 1 and 2 of the verdict form, and the change was made without notice to the appellants. In Question No. 1, the jury was asked if they had found the Bank to have breached its contract with the plaintiff [appellee], for property paid for but not delivered. The jury answered "Yes" to Question No. 1. In Question No. 2, the jury was asked to determine the appellees' damages, if any, for the Bank's breach of contract. Their answer was $600. In Question No. 3, the jury answered "Yes" to the question of whether

or not they found the actions of the Bank and Stella to have jointly caused damage to the appellees. Question No. 4 asked the jury to

"Determine the amount of damages, if any, you find the Plaintiffs have proven to have suffered from the actions of the Defendants jointly. If you find that the Plaintiffs have failed to prove any amount of damages, write the word 'none' in the blank."

The jury answered Question No. 4 with the figure $1,200.

The appellees' counsel explained that the reason for omitting the $600 item in Question No. 2 from the order for judgment is that they concluded prior to writing the order for judgment and after a discussion with Judge Lyle G. Stuart, the trial judge, that the damages awarded in Questions 2 and 4 of the verdict pertained to the same items and that the $600 award in Question No. 2 was already incorporated into Question No. 4 as the Bank's one-half of that $1,200 award.

We also note that Stella's counsel stated in the record that he had no objection to the verdict form as submitted to the jury. Because the changes made by the appellees in writing the order for judgment did not benefit Stella, nor did it increase Stella's liability under the verdict, it is not prejudicial to her. Therefore, we believe that the judgment reflects the verdict of the jury as it pertains to Stella and we will not disturb it.

### THE APPEAL OF THE FIRST NATIONAL BANK AND TRUST COMPANY OF DICKINSON

We reverse the order denying the Bank's motion for a judgment notwithstanding the verdict and enter a judgment dismissing the appellees' action against the Bank on the ground that the receiver Bank in the instant case is immune to liability because it acted in accordance with the orders of the court.

█ The gist of the appellees' action against the Bank is that the Bank failed to follow the court's orders and that such fail-

ure resulted in a breach of contract, i.e., the appellees did not receive everything they had paid for. The general rule is that as long as a court-appointed receiver is acting under and in accordance with the court's directions, the receiver is immune from suit. *See Kermit Const. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976); *Bradford Audio Corporation v. Pious*, 392 F.2d 67, 73 (2d Cir. 1968); 66 Am.Jur.2d, Receiver § 359 (1973); 75 C.J.S. Receiver § 189 (1952). This court stated in *Baird v. Lefor*, 52 N.D. 155, 201 N.W. 997, 999 (1924), that a court-appointed receiver is an officer of the court and "the hand and arm of the court through whom the court acts".

█ Our review of the orders served in connection with the receivership in the instant case and the actions of the Bank indicate that the Bank acted in accordance with those orders. The Bank was appointed receiver for the purpose of selling the Rummels' property in order to make a property division by distributing the proceeds. The sale took place in April of 1978. On May 23, 1978, a hearing was held on the Bank's motion for an order approving acts of receiver and discharge of receiver. At that time there was no evidence that the Bank or the appellees were aware of any missing items or damage to the house and there were no objections by any of the parties, including appellee Neal Hoff, who was present with the appellees' attorney. At this May 23, 1978, hearing the court ordered the Bank to distribute to the Rummels the amounts they were due under the receiver's account and possession of all of the buildings were ordered over to Neal Hoff with the exception of the house in which Stella was allowed to stay for two and a half days after the hearing. The court order further provided that Stella was to vacate the house and deliver it to Neal Hoff at noon, on May 26, 1978. The Bank was also ordered to distribute all funds in its possession and was discharged and released from any further liabilities or responsibilities.

At the May 23, 1978, hearing Stella's attorney, who at that time was Floyd B.

Sperry of Bismarck, discussed the court's order approving acts of the receiver and suggested—and the court ordered—that the buyers of the different tracts of land which were sold under contracts for deed were to pay one-half of each installment that they owed to each of the parties, Stella and Gilbert Rummel, together with the interest and whatever is owed and becomes due and, further, that both Stella and Gilbert Rummel should execute deeds to the property covered by those contracts prior to the making of the last payment so that title would be complete in the buyer.

The trial court stated in regard to the above order:

"The thought being that the Receiver will be discharged so that it won't be necessary to keep this Receivership open until all of the payments are made."

The court and the parties further indicated their intention to discharge the receiver by accepting Mr. Sperry's suggestion:

" . . . that the Receiver is to be fully discharged and that he may sign these contracts over to Gilbert and Stella Rummel and then he will have no further part in it."

This suggestion was stipulated to by the parties and incorporated into the court's order.

In case either party refused to execute deeds prior to the last payments being made, the trial court's order provided that any party who refused to execute a deed would be in contempt of court if he didn't fulfill the agreement.

It is clear from the transcript of the May 23, 1978, hearing and the resulting order that the court and the parties intended to fully discharge the receiver at that time and that the court would enforce its order through its contempt power with no need for a receiver. It is also clear that, at that time, the court was satisfied that the Bank had done its duty as receiver and had accomplished its purposes. It is also clear that Stella retained possession of the house after the discharge of the receiver, the court being satisfied that Stella would properly surrender possession of the house at the appointed time.

As of May 23, 1978, therefore, the Bank had delivered title and possession to everything under the receivership except possession of the house and fixtures, etc., such to be delivered by Stella on May 26, 1978.

For the reasons stated in the opinion we hold that the defendant First National Bank and Trust Company of Dickinson performed all of its acts as receiver herein in accordance with and under the direction of the trial court's orders and is immune to liability to the appellees. Therefore, the Bank was not a proper party to the appellees' lawsuit and for this reason we reverse the district court's denial of the Bank's motion for judgment notwithstanding the verdict.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.