Argued January 11; reversed February 26, 1935

# WEBER *v.* EMPIRE HOLDING
## CORPORATION ET AL.
### (41 P. (2d) 1084)

*Bradley A. Ewers,* of Portland (Ewers & Jensen, of Portland, on the brief), for appellant.

*F. M. Phelps,* of Portland (Phelps & Burdick, of Portland, on the brief), for respondent.

RAND, J.   On May 5, 1932, Robert G. Dieck, the appellant herein, was appointed as receiver *pendente lite* of the property of the defendant Empire Holding Corporation, an insolvent corporation, and served as such until November 10, 1933, when he resigned.   On September 21, 1933, he filed a report stating that he had received the sum of $5,225.99 and had disbursed the sum of $4,728.23 and had a balance of cash on hand in the sum of $497.76.   Among the disbursements mentioned in his report for which he claimed to be entitled to credit were items aggregating $1,100 for receiver's fees, items aggregating $710 for office rent and other items for telephone services and the repair of a typewriter.   In accepting his resignation, the order directs:

"that said Robert G. Dieck shall forthwith surrender and turn over to Merle G. Campbell the receiver herein, appointed for and in his place and stead, all of the property and assets of said receivership, as well as all cash on hand, and shall turn over and pay to said receiver, in addition to the cash on hand, and as shown by the report of said Robert G. Dieck, submitted to the above entitled Court all sums of money paid to said receiver and not authorized by an order of the above entitled court, and especially said sums paid as receiver's fees and purporting to be for the use of the office of the said Robert G. Dieck and for the payment of said Robert G. Dieck's telephone service, and upon the failure of said

Robert G. Dieck to forthwith transfer and pay to said Merle G. Campbell, receiver said sums, that said Merle G. Campbell, receiver, shall forthwith take the necessary steps to collect said sums from Robert G. Dieck or from the bondsmen of said Robert G. Dieck in the manner provided by law.''

Prior to the filing of said report, the trial court had allowed Dieck $900 as receiver's fees and, after the entry of the order, in partial compliance therewith, Dieck delivered to the new receiver the cash on hand and paid to him the additional sum of $300, and delivered all property and assets in his hands, but failed to pay over any other sums of money.

On January 19, 1934, Dieck filed a petition for additional fees, setting forth, among other things, that the aggregate time actually expended in the performance of his duties was 130.2 days; that the services were reasonably worth the sum of $20 per day, and that he had necessarily incurred expenses in the sum of $610 "for office rent, telephone, stenographer, typing of various kinds and other miscellaneous office expenses", and also that he had attended as receiver the trials of five cases which were tried in Hillsboro, McMinnville, Medford and Portland, and praying that a time be set for the hearing of his account and that he be allowed additional compensation for his services as receiver.

■ On January 22, 1934, an unverified answer to said petition was filed by the new receiver, alleging in substance that Dieck was not entitled to make any charge for office rent, telephone services or typewriter repairs, and that his account was padded, and objecting to the allowance of any of said items. The record does not disclose that this answer was ever served on Dieck but it is claimed that, because he failed to reply thereto, he admitted the truth of the charges thus made. In matters of this kind, there is no requirement that formal plead-

ings should be filed by either party nor was it at all necessary that the new receiver should file any answer to Dieck's petition. His failure, therefore, to file a reply to said answer does not constitute an admission against him and is of no importance whatever.

On March 16, 1934, without any hearing whatever being granted to Dieck and without the taking of any testimony either for or against the petition, the court entered an additional order, stating that Dieck had withdrawn from the funds in his hands as receiver the sum of $673.25 over and above all sums authorized by the court or repaid to the new receiver, and ordered him immediately to pay said sum over to the new receiver, and, upon his failure to make such payment, again directed the new receiver to commence proceedings to recover said sum from the National Surety Corporation, the surety on Dieck's bond. The order further directed that Dieck be not permitted to present any claim for additional fees until said sum had been paid. The order thus made was an ex parte order and entered without notice to Dieck.

Thereafter and on May 9, 1934, through his attorneys, Dieck filed a motion to set aside and vacate the order of March 16, 1934, and to grant to the petitioner the right to be heard and prove his account. This motion was supported by his own affidavit, in which he stated, in effect, that prior to the entry of the order objected to a time had been fixed for the hearing of his petition and that at said time he was present with his attorneys and witnesses but the court had refused to permit any hearing thereon. After the filing of said petition and affidavit, an affidavit in opposition thereto was filed by F. M. Phelps, stating among other things:

"That this affiant as one of the attorneys for said receivership does state that by virtue of said handling

of said receivership by said Robert G. Dieck, that he is not entitled to a hearing until such time as he has purged himself of contempt and that a hearing at this time would raise a serious question as to whether or not the present receiver could proceed against the bondsmen of said Robert G. Dieck.

"This affiant does further state that he is of the opinion that said Robert G. Dieck has been fully and well paid for all services rendered for and on behalf of said receivership."

On May 15, 1934, the trial court then made a further order without the granting of any hearing or the taking of any testimony in which it was recited that Dieck had, without any authority and against the specific order of the court, paid to himself out of the funds in his hands as receiver the sum of $973.25, which, by a former order, the court had directed him to repay but that he had failed to pay said sum or any part thereof except $300 and had filed a petition for an allowance of an additional sum for his services; that he had been enjoined and restrained from presenting any claim for services until he had repaid said sum to the present receiver, and directing that his motion to set aside and vacate the order of March 16, 1934, be denied. From this order Dieck has appealed.

It is clear that the authority granted to Dieck to pay himself the sum of $900 did not authorize the payment to himself of $1,100, and the order of the court requiring him to return that sum was justified, but the payment of $300 since made to the new receiver should, we think in justice to Dieck, be applied to the extent of $200 thereof in settlement of such overpayment. As to the other disputed items, there was nothing before the court so far as this record shows to impeach the account or to show that Dieck's action in disbursing the sums objected to was improper, although

the record does show that no specific authority to make said payments had been granted to him.

It was contended upon the argument here that the receiver should have used the offices of the defendant corporation and not, as it is claimed, his own private office. It appears, however, that shortly after his appointment, Dieck was ordered to sell and did sell all the furniture in the offices of the defendant corporation. It further appears from the record that the rental price of said offices under the lease to the defendant corporation was some $400 per month and that, because of the terms of the lease or for some other sufficient reason, the lessor was allowed something over $4,000 as rental for said offices. Whether Dieck should have used those offices under those circumstances instead of a cheaper office as was done is a matter which cannot be determined in the absence of some proof. The same is true in respect to the telephone charges and repair charges on a typewriter.

▮ Dieck, as receiver, was an officer of the court appointing him and was subject at all times to the orders and directions of the court and, since there is no statute in this state which defines the powers of a receiver, his powers are those conferred by the order appointing him. He was bound to exercise such powers for the equal benefit of all parties in interest and to hold the property intrusted to him for whoever might finally establish title thereto. Although he was not a trustee, the general rule applicable to trustees and executives applied to him. He was bound to keep clear, definite and accurate accounts of his receipts and expenditures, and if he did not do so, the presumptions are all against him, obscurities and doubts being resolved adversely to him: 2 Perry on Trusts, section 821; *White v. Rankin,* 18 App. Div. 293 (46 N. Y. S. 228). It is a well-

settled rule of law that where objections are filed to an account, the accounting party must prove his account in so far as attacked: *Vernon Metal & Produce Co., Inc., v. Joseph Joseph and Brothers Co.,* 241 N. Y. 544 (150 N. E. 547).

■ The allowance of compensation to a receiver for his own services and for that of his counsel is a matter within the sound judicial discretion of the trial court "since it has far better means for knowing what is just and reasonable than an appellate court can have": *Trustees v. Grennough,* 105 U. S. 527 (26 L. Ed. 1157). And when the fees have been fixed, "the action of the court below is treated as presumptively correct": *Stuart v. Boulware,* 133 U. S. 78, 82 (10 S. Ct. 242, 33 L. Ed. 568). In *Martin v. Martin,* 14 Or. 165 (12 P. 234), the court said:

"There is no compensation fixed by the statute, and in the absence thereof we think the court has the right to allow a reasonable compensation. And as the receiver is directly under the control of the court that appoints him, such court is in a better condition to judge as to the amount which would be reasonable in such a case than an appellate court. Still, we believe that this court has a supervisory jurisdiction over the circuit court in such matters, and should exercise it when the justice of the case demands. Otherwise, an estate might be frittered away and the creditors receive no benefits therefrom. The allowance to the respondent in this case was a final order affecting a substantial right, and made in a proceeding after decree, and must therefore, for the purpose of being reviewed, be deemed to be a decree."

■ In *Hembree v. Dawson,* 18 Or. 474 (23 P. 264), and *First National Bank v. Oregon Paper Company,* 42 Or. 398 (71 P. 144), it was held that the allowance made by the trial court to a receiver, being within the discretion of that court, should not be disturbed except for an abuse of discretion, but since the duty of proving the

disputed items of the Dieck account devolved upon him, it would seem to follow from the plainest dictates of justice and natural right that an opportunity should have been afforded him to make that proof, even though he was in part in default, and that the action of the court in refusing to grant that right ought not to be upheld as a proper exercise of judicial power. As said in *Martin v. Martin,* supra, this court has a supervisory jurisdiction over the circuit court in such matters and should exercise it when the justice of the case demands. Mr. Justice Lurton, then of the United States Circuit Court of Appeals of the Sixth Circuit, said in *Ruggles v. Patton,* 143 Fed. 312:

"Nothing is better settled than that an allowance to a receiver by way of compensation for his services is not subject to the arbitrary determination of the court, but should be made upon a hearing at which the parties interested have an opportunity of contesting the claim."

If creditors or other parties interested in an allowance to a receiver of compensation for his services are entitled to a hearing and an opportunity to contest the claim, then a receiver whose duties have been terminated by resignation or discharge is clearly entitled to a hearing and an opportunity of offering evidence in support of his claim, particularly so in a case where a new receiver has been directed to bring an action against his bondsmen to recover for disbursements such as those in controversy here. That a court appointing a receiver has the unquestioned authority and it is its duty to compel a receiver, who has embezzled funds in his possession or wrongfully applied them to an improper or unauthorized use, to return the funds is beyond controversy. But, with the exception of the $200 applied in payment of the receiver's fees, the question of whether any of the funds in the hands of the

receiver had been wrongfully appropriated or misapplied was one upon which the receiver had a right to be heard. Particularly is this so, since there was nothing in the record tending to show that a misapplication had been made and was in respect to matters concerning which the trial court could have had no personal knowledge or information of its own.

For these reasons, the order from which this appeal was taken is reversed.

CAMPBELL, C. J., and BEAN and BAILEY, JJ., concur.