Donald J. KRIST, Appellant (Claimant),

v.

AETNA CASUALTY & SURETY, as surety for the Trusteeship of William J. Fry Consultants, Inc., Appellee (Respondent),

v.

WILLIAM J. FRY CONSULTANTS, INC., Receiver, (Respondent).

No. 83–8.

Supreme Court, of Wyoming.

Aug. 10, 1983.

 

Walter C. Urbigkit, Jr. (argued) and Carole Shotwell of Urbigkit & Whitehead, P.C., Cheyenne, for appellant.

Julie Nye Tiedeken (argued) and Paul B. Godfrey of Godfrey & Sundahl, Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

CARDINE, Justice.

This was a foreclosure action by Luxury Motels, Inc. (Luxury Motels) in which William J. Fry Consultants, Inc. was appointed receiver for the Ramada Inn Motel (Ramada Inn) in Cheyenne, Wyoming. Fry was receiver from July 5, 1979, to August 10, 1979, (approximately five weeks) when, pursuant to stipulation of the parties, he resigned and the court appointed Donald J. Krist successor receiver. Donald J. Krist was the sole stockholder and president of Luxury Motels. Krist, individually, on behalf of Luxury Motels, and as successor receiver filed a claim against Fry and his surety, Aetna Casualty and Surety Co. (Aetna), claiming Fry's failure to perform the duties of receiver resulted in damage to the receivership estate and in attorneys fees and expenses in accounting and winding up in the amount of $317,239.38. The trial court granted judgment in favor of Krist in the amount of $3,428.18 and against Krist on all other claims. Krist appeals from this judgment.

We will affirm.

Appellant makes the following contentions:

"A. The trial court erred in denying the Successor Receiver's claim charging the first receiver's surety for Successor Receiver's actual expenses and attorney fees incurred in forcing a windup and accounting of the prior receivership.

"B. The trial court erred in denying the Successor Receiver's claim charging the first receiver's surety for damages to the

receivership estate during the prior receivership.

"C. The trial court erred in its computation and denial of the Successor Receiver's claim against the first receiver's surety for funds not properly accounted for during the first receivership.

"D. The trial court erred in its computation of the amounts chargeable against the first receiver's surety for funds improperly spent by the first receiver.

"E. The trial court erred in denying Successor Receiver's claims for expenses incurred in winding up and accounting for the prior receivership, (actions required by the trial court itself) on the basis that the Successor Receiver had originally requested this receivership, and consequently was not entitled to be compensated for expenses incurred in complying with the court's direction."[1]

Donald J. Krist owns all of the stock of Luxury Motels. In 1964 Luxury Motels purchased the Ramada Inn in Cheyenne, Wyoming. On May 14, 1975, Luxury Motels, by installment contract and agreement, sold all of its interest in the Ramada Inn. M.J.B. Motel, Inc. (M.J.B.) ultimately acquired this interest assuming the obligations and burdens of the Luxury Motels' installment contract and agreement. M.J.B. defaulted in payments required by the installment contract and agreement. Krist also determined at that time that M.J.B. had failed to pay the Ramada Inn franchise fee of $17,846 causing the national Ramada Inn, Inc., to terminate the franchise; had failed to pay taxes to the county treasurer in the sum of $11,298; had failed to pay insurance premiums in the amount of $21,892; had permitted a lien to be filed by IRS in the amount of $34,000; had permitted waste; and, failed to maintain and refurbish the guest rooms. Thus, on February 9, 1979, Luxury Motels commenced suit against M.J.B. to foreclose and terminate

the installment contract and agreement and take possession of the Ramada Inn.

On May 3, 1979, appellant, Luxury Motels, filed a motion for appointment of receiver. Prior to the appointment of a receiver, the Ramada Inn franchise had been lost; and appellant estimated that $160,000 would be required to restore and refurbish the property and regain the Ramada Inn franchise.

On June 26, 1979, William J. Fry Consultants, Inc. was appointed receiver conditioned upon posting bond. Fry's receiver bond was filed July 5, 1979. Appellee, Aetna, is surety on that bond.

Within a short time after appointment, it became apparent to Fry that the Ramada Inn was insolvent and could not pay debts as they came due. Creditors were pressing the receiver for payment. Priority creditors' claims were in the amount of approximately $120,000 and could not be paid. The choices were bankruptcy or obtaining sufficient funds to satisfy priority creditors and liens and keep the business operating. Because Krist was obligated as guarantor of obligations arising out of the sale of the Ramada Inn in the amount of $800,000, Fry's attorney contacted Krist's attorneys and they reached an agreement under which Fry would resign and Krist would be appointed successor receiver. Pursuant to stipulation of the parties, the court entered an order allowing Fry to resign, appointing Krist as successor receiver, and providing that Fry's bond remain in effect until he submitted an accounting to be approved by the court. Krist took over operation of the Ramada Inn; met and dealt with the creditors, suppliers, the power company, and the telephone company; and brought three of his employees from Norfolk, Nebraska, to Cheyenne to operate the motel. Krist then was involved in the operation of two motels; and he divided his time, one-half to the motel in Norfolk, Nebraska, and one-half to the motel in Cheyenne. When he

1. The issues, stated by appellant in five paragraphs, all concern recovery of damages. Krist did not claim either attorneys fees or fees for services performed as successor receiver other than those relating to damages flowing from

the alleged breach of duty by Fry as receiver. Thus, the single issue involved in this appeal is whether the damages claimed are recoverable by the receivership estate from Fry and his surety.

took over the Ramada Inn in Cheyenne, it was run down and had a low occupancy rate.

On September 10, 1979, Fry filed an accounting with the court. Luxury Motels and Donald J. Krist, as successor receiver, thereafter filed a resistance and objections to this accounting.

On November 19, 1979, pursuant to stipulation, judgment was entered in the foreclosure action between Luxury Motels and M.J.B. in which Luxury Motels was granted immediate possession of the Ramada Inn, and all right, title, and interest in the property was restored to Luxury Motels. Luxury Motels waived attorneys fees and costs. At that time, Fry was again ordered to file an accounting which was subject to an appropriate hearing by the court. On November 17, 1981, Aetna filed a petition for release of surety. Following hearing, the court ordered Aetna, who by now had been joined as a party, to prepare and file a receivership accounting on behalf of Fry and set all matters for trial. Aetna employed and paid a firm of certified public accountants to prepare an accounting which was filed with the court on March 11, 1982. Donald J. Krist, individually and as successor receiver, and Luxury Motels filed resistance and objection to the receivership accounting.

On April 28, 1982, Krist, individually and as successor receiver, and Luxury Motels, filed a claim against Fry and Aetna for attorneys fees, travel expenses, real estate taxes, cost of restoration of motel sign, costs of reacquisition of the Ramada Inn franchise, the IRS liens, and missing cash in the total sum of $317,239.38. Following trial to the court, judgment as to Krist as successor receiver was entered against Aetna in the sum of $3,428.18 and denying all

other claims of Krist. From this portion of the judgment, Krist has appealed.

I

*Did Fry fail to perform in his obligations as receiver causing appellee, Aetna, to became liable for damages resulting from this default?*

On June 26, 1979, Fry was appointed receiver subject to qualifying and posting bond, pursuant to § 1–33–103, W.S.1977.[2] On July 5, 1979, Fry filed his bond which provided:

"* * * Principal [Fry] * * * will faithfully discharge the duties as Receiver in said action, and that he will pay over all monies and account for all property which may come into his hands as Receiver, as Court or Judge may therefore direct, and obey the Orders of the Court therein."

A receiver is an officer and arm of the court and acts under the direction and supervision of the court. The receiver's duties require that he keep separate, accurate records of receipts and disbursements and all business of the receivership, that he take possession of and keep and preserve receivership property, that he report to the court, account, and obey orders of the court. *Weber v. Empire Holding Corp.*, 149 Or. 503, 41 P.2d 1084 (1935); 2 Clark, Law of Receivers §§ 382, 383. The receiver acts under the control of the court and as the court may authorize.[3]

The court ordered Fry to file an accounting. The first accounting by Fry was filed late, was inadequate, and was not accepted by the court. Fry was again ordered to account. Fry's surety, Aetna (appellee herein) was joined as a party in the proceeding. The court ordered appellee to

---

**2.** Section 1–33–103, W.S.1977, provides:

"Before he enters upon his duties the receiver must be sworn to perform faithfully and give surety approved by the court, or by the clerk upon order of the court, in such sum as the court shall direct not to exceed double the amount of any property involved, conditioned that he will faithfully discharge the duties of receiver and obey the orders of the court."

**3.** Section 1–33–104, W.S.1977, provides:

"The receiver under control of the court, may bring and defend actions in his own name as receiver, take and keep possession of the property, receive rents, collect, compound for and compromise demands, make transfers and generally do acts respecting the property as the court may authorize."

employ a certified public accounting firm to prepare and file an accounting for the term of its principal (Fry). Appellee complied with the court's order and proved the accounting at the trial of this case.

The court held that Fry had failed in many respects to carry out the duties required of him as a receiver and had breached the terms of his undertaking.[4] This holding is amply supported by the record and not contested by appellee. Thus, appellee is liable for whatever damage and loss resulted to the receivership estate because of Fry's actions during the term of Fry's receivership, i.e., from July 5, 1979, through August 10, 1979.[5]

## II

*Should successor receiver recover from appellee, expenses and attorneys fees incurred in the accounting and winding up the prior receivership?*

■ Appellant earnestly contends that the successor receiver, Krist, and his attorney were denied recovery of fees because Krist was a party to the foreclosure action, was a major creditor, had sought the receivership, and was interested in the outcome of the case. If this were the sole basis for the court's decision, we should not hesitate to reverse. There is no general rule that a receiver who is also a creditor cannot recover reasonable fees and expenses for acting as a receiver. Cases which hold otherwise are those in which an interested creditor was appointed receiver upon agreeing to waive any claim for compensation. This type of agreement has generally been enforced by the courts and compensation to

the receiver denied. *Polk v. Johnson,* 160 Ind. 292, 66 N.E. 752 (1903); *Currier v. Stauffer,* 168 Okl. 334, 32 P.2d 871 (1934). In this case Krist, appointed by the court pursuant to stipulation, did not waive fees. However, it must be noted that he seeks fees and damages only against Fry's surety—not from the receivership estate.

■ The allowance of compensation to a receiver and his attorney is a matter addressed to the sound discretion of the trial court. This is because the receiver acts under the authority of the court and is considered to be an officer of the court. The court supervises him, knows his circumstances, the services rendered by him, the amount of time he has expended, what is reasonable, and can judge the value of those services. *Ginsberg v. Katz,* 27 Wash. App. 593, 619 P.2d 995 (1980).

In this case, the court questioned the necessity of Krist as successor receiver, expending the large amount of time, expense, costs and attorneys fees in pursuing Fry's surety. The court also found that Krist, in reality, was pursuing his own interest as a major creditor, as opposed to acting as successor receiver. Krist did file his claim individually and on behalf of Luxury Motels, and as successor receiver. Although these matters were properly considered by the court, it is apparent that they played a minor role in the final decision. Of more significance is the following.

## III

*Should Krist, successor receiver, have obtained approval and authority of the court to incur attorneys fees and the large*

4.  By decision letter of September 30, 1982, the court found that:
    "* * * Fry had not established any accounting system or records sufficient to afford adequate and proper financial details of the receivership operation; * * * bills were paid by Fry as receiver, which were obligations incurred prior to receivership; * * * Fry failed to pay priority expenditures * * * and failed to pay some incurred salaries * * *; that after resignation, as receiver, Fry neglected and refused to file a proper accounting as * * * required by the specific Order of this Court * * *.

"When considered as a whole, * * * Fry failed in significant respect to carry out the duties required of him as a receiver * * * under the terms of his bond, and as required of him by specific Orders of this Court."

5.  Although the order appointing Fry receiver was entered June 26, 1979, his appointment was not effective until he qualified and posted bond as required by order of the court and by § 1–33–103, W.S.1977. His bond was filed July 5, 1979.

*expense of litigation in pursuing his claim against Fry and appellee?*

Krist did not apply to the court for an order authorizing him to employ an attorney, to file a claim as successor receiver against Fry and his surety, to litigate that claim and incur the expense of litigation and attorneys fees in seeking recovery. In his letter opinion of November 17, 1982, the court stated, referring to Krist, that:

" * * * He could not incur the large expenditures for litigation against the surety of the prior receiver, at least without prior express approval by order of the court, when the purpose of these costs and fees which he now seeks to recover was obviously to recover for the benefit of the creditors, of which he was the largest in his individual and corporate capacity, from the surety of the prior receiver on its bond."

We need not decide now whether, in a proper case, after the fact, the court might in its discretion relieve the receiver from a failure to obtain such authorization. The court makes it clear that it would not have relieved the receiver from his failure in this case.

In *Harlem Savings Bank v. Melzer,* 95 Misc.2d 142, 406 N.Y.S.2d 966 (1978), it was held that where the file indicated no order authorizing the receiver to employ counsel, the receiver had no authority nor could he be paid for these expenses even though all of the parties concerned consented. The general rule is that a receiver can neither sue nor be sued without order of the court. When the receiver steps outside his authority granted to him by the court, he cannot claim the protection of the court and he can be sued as an individual.

Section 1–33–104, W.S.1977, supra, provides that the receiver *under the control of the court* may bring and defend actions *as the court may authorize.* The statute is clear and unambiguous. It requires that the receiver conduct his affairs under the control of the court and bring and defend such actions *as the court may authorize.* In this case the receiver did not obtain authorization of the court to proceed as he did.

He filed his claim individually and on behalf of Luxury Motels, and as successor receiver. Were he pursuing the claim individually or on behalf of Luxury Motels, he would be responsible for his own attorneys fees and expenses as were other creditors who intervened in this case. But litigating the claim as successor receiver required authorization of the court. Such authorization was neither sought nor obtained, and the claims for fees could properly have been disallowed upon this ground alone.

IV

*Did Krist, either individually, on behalf of Luxury Motels, or as receiver, meet the burden of proof required to establish his claims for fees and expenses as receiver, attorneys fees, damage to the receivership estate, and loss of monies not properly accounted for?*

A. AS TO RECEIVER'S FEES AND EXPENSES AND ATTORNEYS FEES.

After awarding judgment to appellant in the sum of $3,428.18, the court held in its decision letter of September 30, 1982, as follows:

"The Court finds that the remaining claims of Mr. Krist are not supported by the evidence as being directly caused by or a result of any breach of duty by the receiver Fry. It is true that the receiver, Fry, * * * breached various duties imposed upon him as receiver. However, Donald J. Krist has failed to show that the actions of Fry as receiver caused any of the claimed damages of Mr. Krist except those expressly allowed above ***."

Where the receiver files an account with the court, the burden of proof is upon the receiver to prove that accounting. One who asserts a charge or a counterclaim against the receiver or the receivership estate has the burden of proof as to that claim. *Morrison v. Reilly,* Wyo., 511 P.2d 970 (1973); *Atlas Fence Co. v. West Ridgelawn Cemetery,* 1 N.J. 110, 62 A.2d 212 (1948); 2 Clark, Law of Receivers § 383.1 (b). In this case the trial properly pro-

ceeded with appellee first proving its accounting. Krist then proceeded with his proof on each of his respective claims.

■■■ The trial court, sitting without a jury, is the trier of fact. On appeal, we assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it. *Crown Cork & Seal Co., Inc. v. Admiral Beverage Corp.*, Wyo., 638 P.2d 1272 (1982); *City of Rock Springs v. Police Protection Ass'n*, Wyo., 610 P.2d 975 (1980).

■■■ The trial court observed the witnesses, their demeanor on the stand, heard and weighed their testimony. The evidence was conflicting and often confusing. The court, in its letter opinion ruling on the motion for new trial, stated:

" * * * I have found it impossible to ascertain from those exhibits or the recitation of claims on pages 33, 34 and 35 of the brief, * * * which [claims] must be held as a matter of law to be claims of the successor receiver as opposed to claims of the plaintiff in the principal action on its merits."

During the period of time covering this controversy, Krist was performing services and incurring expenses on behalf of several separate interests. Just one of these involved Fry, and the charges for that interest are not separated from the others. Thus, Krist, as president, was performing services for Luxury Motels, plaintiff in the foreclosure suit; he was performing services as successor receiver in foreclosure after August 10, 1979, in matters not involving the Fry receivership; he was performing services as successor receiver in foreclosure claiming damages against Fry and appellee; and, he was performing services for himself as a creditor looking after his own interest. After the November 19, 1979 settlement of the foreclosure action restoring possession to Krist, he was performing services and incurring expenses in the operation of the Ramada Inn.

Appellant agrees that it seeks and should recover only the attorneys fees and expenses that resulted from the Fry receivership during the five-week period of its existence. However the court found, and we agree, that it was impossible to ascertain which of the expenses were attributable to the various interests. A bill containing a series of charges not sufficiently itemized is inadequate. *Commonwealth ex rel. Carson v. Monongahela Valley Bank of Duquesne*, 239 Pa. 254, 86 A. 719 (1913).

■■■ Krist traveled to Wyoming on numerous occasions, met with his attorneys, and transacted business. He testified that he was looking after the operation of the Ramada Inn and his own business interests; meeting with creditors; and, arranging for the continuance of utilities and services. He was also involved in the foreclosure proceedings and other activities. Some part of his expenses may be attributable to Fry's default in his five-week receivership. But what part? That is not shown by the evidence, and there was nothing presented from which the court could have made that determination or awarded damages. The court could not speculate or conjecture in awarding damages. *Chrysler Corp. v. Todorovich*, Wyo., 580 P.2d 1123 (1978); *Opheim v. United Mobile Homes, Inc.*, Wyo., 511 P.2d 1289 (1973).

B. AS TO DAMAGE TO THE RECEIVERSHIP ESTATE.

■■■ Damage to the receivership estate claimed by appellant was as follows:

(a) loss of Ramada Inn franchise, $69,960;

(b) replacement of Ramada Inn sign, $105,307.20;

(c) failure to pay taxes to treasurer, Laramie County, $11,945.99;

(d) damage to thermostats, $4,240.08;

(e) failure to pay ground lease, $4,000.

Discussing first the items of claimed damage in paragraphs (a) and (b) above, Krist testified upon cross-examination that payments had not been made upon the Ramada Inn franchise and that the franchise had been terminated as of June 1, 1979.

This was a month prior to Fry being appointed receiver. Krist further testified that with the franchise being terminated, it was necessary to remove the sign. It is undisputed that the loss of the franchise and sign occurred prior to Fry becoming receiver. Since Fry did not cause this damage, his surety is not liable therefor.

Damages claimed in paragraph (c) are for taxes due the county treasurer of Laramie County in the sum of $11,945.99. Krist himself testified that these were taxes for the year 1978. They were due and payable before Fry became receiver. If this were an item of damage, it was not caused by Fry and his surety is not liable for it.

In paragraph (d), damages were claimed due to loss or destruction of thermostats in the amount of $4,240.08. The only testimony relative to this damage was that Krist paid this amount to have the thermostats repaired or replaced and that *he believed* it occurred during the time Fry was receiver because they were necessary to the operation of the motel and rental of rooms. Other evidence indicated that the motel was in a poor, run-down condition, and its occupancy rate was thirty to fifty percent. Thus, fifty to seventy percent of the rooms were vacant prior to Krist being appointed receiver. In his complaint filed in February 1979, Krist alleged that waste was being committed at the motel. There were employees working at the motel during the entire time, yet none of them were called to testify relative to the condition of the motel, the thermostats, or the damage. Krist's bare statement as to his belief, not based on personal knowledge, is speculative; and, in the judgment of the court, it did not satisfy the quantum of proof necessary to establish this element of damage. *Morrison v. Reilly,* supra.

■ In paragraph (e), damages were claimed for failure to pay rental on the ground lease in the amount of $4,000. The rental was a just debt and not paid by Fry. However, the business was in serious financial difficulty when Fry became receiver. There were not sufficient funds nor revenues from operations to pay all debts. This debt was one of those not paid. It is not damage caused by Fry and not chargeable to his surety.

C. AS TO ERRORS IN COMPUTATION IN THE ACCOUNTING, FUNDS NOT PROPERLY ACCOUNTED FOR, AND FUNDS IMPROPERLY EXPENDED.

■ Appellant contends that the first receiver should have realized profits from room rentals during Frontier Days of $25,000, but failed to do so; that there were direct accounting mistakes in the amount of $7,273 as shown by Exhibits 4, 6, 7, 8, 28, and 45; and, that of the $18,376.90 shown by Exhibit 19, the significant items of damage to the receivership were the CBS sign at $800, title insurance at $2,500, and payroll incurred prior to the receivership, but paid from receivership income.

Exhibit 19 generally summarizes much of the above claim. With respect to Frontier Days, that exhibit describes total missing revenues of *approximately* $33,000. Mr. Krist testified that he arrived at this approximate figure by comparing revenues for the period of Fry's receivership in 1979 with other years. He contends further that this testimony is undisputed and must be accepted by the court as true.

The court is not bound blindly to accept the testimony of a witness. Where the testimony is by an interested witness and is uncertain, as here where the damage was characterized as "approximate," and is improbable, it may be disregarded. *William Fitzgerald Milk Products Corp. v. Kimbro Service Warehouse, Inc.,* 112 Ga.App. 456, 145 S.E.2d 630 (1965); *Burns v. Radoicich,* 77 Cal.App.2d 697, 176 P.2d 77 (1947).

■ But in this case the testimony was also placed in question by other evidence. The Ramada Inn, during the first half of 1979 and during the period of the Fry receivership, was run down and dirty; it had lost its sign; its telex system was not operable; and, it was not receiving reservations from the national Ramada Inn network. Evidence given by Mr. Krist showed that the operators of the motel had no interest

in renting rooms. The final accounting, filed on behalf of Fry by appellee, indicated gross revenues of $80,094 for the five-week period of the Fry receivership. During twenty-seven days of the approximate same period in 1980, when Mr. Krist had retaken possession and was running the Ramada Inn, the gross revenues were in the amount of $82,358. There was no direct evidence that $25,000 more in room rentals was received during Frontier Days and not accounted for. Appellant suggests that the doctrine of res ipsa loquitur satisfies his burden of proof. The doctrine is not applicable to this case.

Appellant further contends that there were accounting mistakes in the amount of $7,273 and that this amount should have been awarded to the successor receiver. Accountings filed with the court were for different periods. The first accounting was for the period July 5, 1979, through August 10, 1979. The accounting filed by the certified public accounting firm employed by appellee was for the period June 26, 1979, through August 10, 1979. Thus there were some differences because of the different periods involved. However, when the accountings were compared, it was obvious that they were very close with respect to total receipts and expenditures and that they were reasonably accurate. The small discrepancies probably resulted from the fact that, during the Fry receivership, the Ramada Inn, because of its shaky condition, was required by many creditors to pay cash as goods and merchandise were received. The final accounting was accepted and approved by the court, and the evidence supports this finding.

Appellant's Exhibit 19 summarizes the damages claimed in the amount of $18,376.90. Much of the exhibit lists expenditures such as Mountain Bell, plumbing, telex marketing, registration, tax and food, and items which must have been necessary to any attempt to operate the motel. With respect to the claim of $800 for the CBS sign and $2,500 for title insurance, there is no direct evidence of when these items were paid. However, based upon the fact that the Ramada Inn sign was lost prior to Fry's receivership, it is likely that they were paid prior to the time Fry became receiver.

With respect to the claim of $10,000 for payments to employees improperly made, it is clear that these payments were made during June 1979 prior to the time Fry became receiver.

All of the above matters were presented to the trial court upon conflicting evidence and testimony and resolved by the court against appellant.

With respect to all of the issues raised by appellant which have heretofore been discussed in this opinion, there was substantial evidence to support the findings and conclusions of the trial court. They will not be disturbed on appeal. The judgment, therefore, is affirmed.